**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sandra Dowling and Dennis Dowling, husband and wife<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>Sheriff Joseph Arpaio and Ava Arpaio, husband and wife; Maricopa County Board of Supervisors; Maricopa County, a Municipal entity; John Does I–X; Jane Does I–X; Black Corporations I–V; White Partnerships I–V,<br><br>　　　　Defendant. | No. 09-1401-PHX-JAT<br><br>**ORDER** |

Pending before this Court is the Arpaio Defendants' First Motion for Summary Judgment (Dkt. 56) that Defendants Maricopa County Board of Supervisors and Maricopa County joined (Dkt. 57). As permitted by the Court, Plaintiffs Sandra Dowling and Dennis Dowling filed responses in opposition to the First Motion for Summary Judgment (Dkt. 70, 80),[1] and Defendants filed a consolidated reply (Dkt. 91, 92). A hearing on the First Motion

---

[1] Pursuant to the Court's limited grant of Plaintiffs' motion for relief under Rule 56(f) of the Federal Rules of Civil Procedure, Plaintiffs were permitted to file a second response to the First Motion for Summary Judgment after additional discovery on the statute of limitations issue was completed. (Dkt. 73.) On March 4, 2011, Plaintiffs filed a second supplemental response to the First Motion. (Dkt. 147–48.) The Court ordered the second supplemental response be stricken from the record as untimely. (Dkt. 149.)

was held on March 7, 2011. For the reasons that follow, the Court grants the First Motion for Summary Judgment in part with respect to Plaintiffs' state law claims, but denies the motion with respect to Plaintiffs' § 1983 claims.

**I.     BACKGROUND**

Plaintiff Sandra Dowling ("Dowling") was the Superintendent of Public Instruction for Maricopa County, Arizona from 1988 to 2008. (Defendants' Statement of Facts, Dkt. 58 ["DSOF"] ¶ 1; Plaintiffs' Controverting and Supplemental Statement of Facts, Dkt. 71 ["PSOF"] ¶ 1.) As Superintendent, Dowling oversaw an accommodation district, known as the Maricopa County Regional School District (the "MCRSD"). (DSOF ¶ 2; PSOF ¶ 2.) Dowling served as the sole member of the governing board of the MCRSD. (DSOF ¶ 3; PSOF ¶ 3.) By 2006, there were 12 schools in the MCRSD, which included three campuses of the Thomas J. Pappas School for homeless children. (DSOF ¶ 2; PSOF ¶ 2.) The Maricopa County Board of Supervisors (the "Board") was required to annually budget an amount that would meet the requirements of the special county school reserve fund, including the necessary expenses for conducting accommodation schools. A.R.S. § 15-1001(A)(5). The MCRSD operated a budget deficit for many years. (DSOF ¶ 4; PSOF ¶ 4.) Each year in which the deficit occurred, the Maricopa County Treasurer covered the MCRSD deficit with County funds. (PSOF ¶ 43.)

In 2005, the Board asked Tom Horne, State Superintendent of Public Instruction, to investigate the financial situation of the MCRSD. (DSOF, Ex. 3 at p. 5; PSOF ¶¶ 48–50.) Mr. Horne determined that the MCRSD had been under-funded by $3.5 million over approximately five years. (PSOF ¶ 4; DSOF ¶ 5 & Ex. 3 at p. 5.)

On January 11, 2006, at the request of the Board, the Maricopa County Sheriff's Office ("MCSO") initiated a criminal investigation of Dowling and others at the MCRSD. (DSOF ¶ 7; PSOF ¶ 7.) As part of its investigation, MCSO obtained and executed a search warrant for MCRSD offices on January 25, 2006. (DSOF ¶ 8; PSOF ¶ 8.) Also on January 25, 2006, MCSO obtained and executed a search warrant for Dowling's home. (DSOF ¶¶ 13–14; PSOF ¶¶ 13–14.)

- 2 -

Pursuant to A.R.S. § 12-821.01, Plaintiffs served a 19-page Notice of Claim letter, dated July 10, 2006 (the "2006 Notice of Claim"), on Defendants (and others). (PSOF ¶ 16, DSOF ¶ 16 & Ex. 3.) The 2006 Notice of Claim sets forth legal claims for defamation, intentional inflictions of emotional distress, depravation of civil rights, abuse of process/malicious prosecution, and abuse of government resource. (DSOF, Ex. 3 at pp. 17–18.)

The criminal investigation conducted by MCSO resulted in a grand jury's indictment of Dowling on 25 felony counts on November 16, 2006. (DSOF ¶ 7; PSOF ¶¶ 7, 17.) After being indicted, Dowling was booked and arraigned on the multiple felony counts. (DSOF ¶ 18; PSOF ¶ 18.) On May 4, 2007, based on motions filed by Dowling's attorney, counts 1–10 of the indictment were remanded to the grand jury. (DSOF ¶ 19; PSOF ¶ 19.) In or around June 2007, the prosecution of the criminal case was transferred from the Arizona Attorney General's Office to the United States Attorney's Office due to a conflict of interest. (DSOF ¶ 20; PSOF ¶ 20.)

On August 26, 2008, the Court accepted a Plea Agreement, dated July 11, 2008, entered into by the State of Arizona and Dowling. (DSOF ¶ 23; PSOF ¶¶ 22–23.) The Plea Agreement, in the case captioned CR 2008-007162, provided that Dowling agreed to plead guilty to a misdemeanor (employment of a relative), and the parties stipulated to the following additional item, among other items, "[a]t the time of sentencing, Counts 1–10 that were previously dismissed on August 20, 2007, and the remaining Counts in CR 2006-012508 (Counts 11–23 and Counts 26–27) will be dismissed with prejudice." (DSOF, Ex. 15 at p. 1.)

On September 25, 2008, Plaintiffs served a Notice of Claim letter (the "2008 Notice of Claim") on Defendant Sheriff Joseph Arpaio and the Board. (DSOF ¶ 26 & Ex. 1; PSOF ¶ 26.) The 2008 Notice of Claim states that it was served "in connection with the investigation, arrest, and malicious prosecution of Sandra Dowling," and sets forth causes of action for negligence, reckless conduct, gross negligence, infliction of emotional distress, malicious prosecution, abuse of process, and law enforcement retaliation under Arizona law

1  and 42 U.S.C. § 1983. (DSOF , Ex. 1 at pp. 3, 10.)

2  On June 3, 2009, Plaintiffs filed the Complaint in this action in Maricopa County
3  Superior Court (Dkt. 1-1, Ex. A), and Defendants subsequently removed this action to the
4  United States District Court (Dkt. 1).

5  On July 27, 2010, the Court permitted Defendants to file two motions for summary
6  judgment. (Dkt. 53.) A first motion for summary judgment could be filed on statute of
7  limitations issues, and a second motion for summary judgment on the merits could be filed
8  after the close of discovery. On August 27, 2010, Defendants filed the pending First Motion
9  for Summary Judgment. (Dkt. 56.) This motion addressed the malicious prosecution claim
10 on its merits, in addition to statute of limitations issues. (Dkt. 56 at pp. 10–17.) Recognizing
11 the violation of the Court's Order, Defendants filed a motion to withdraw the substantive
12 arguments made in the First Motion for Summary Judgment, and to preserve those arguments
13 for a second motion for summary judgment. (Dkt. 87.) The Court granted the motion to
14 withdraw (Dkt. 116); therefore, this Order will not consider any of the substantive arguments
15 made by either party in connection with the merits of Plaintiffs' malicious prosecution claim
16 (Count II of the Complaint).

17 **II.    LEGAL STANDARD**

18 Summary judgment is appropriate when "the movant shows that there is no genuine
19 issue as to any material fact and that the moving party is entitled to summary judgment as a
20 matter of law." FED.R.CIV.P. 56(a). A party asserting that a fact cannot be or is genuinely
21 disputed must support that assertion by "citing to particular parts of materials in the record,"
22 including depositions, affidavits, interrogatory answers or other materials, or by "showing
23 that materials cited do not establish the absence or presence of a genuine dispute, or that an
24 adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1). Thus,
25 summary judgment is mandated "against a party who fails to make a showing sufficient to
26 establish the existence of an element essential to that party's case, and on which that party
27 will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
28 Initially, the movant bears the burden of pointing out to the Court the basis for the

1  motion and the elements of the causes of action upon which the non-movant will be unable
2  to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-
3  movant to establish the existence of material fact. *Id.* The non-movant "must do more than
4  simply show that there is some metaphysical doubt as to the material facts" by "com[ing]
5  forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec.*
6  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting FED.R.CIV.P. 56(e)
7  (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a
8  reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,*
9  *Inc.*, 477 U.S. 242, 248 (1986). However, in the summary judgment context, the Court
10 construes all disputed facts in the light most favorable to the non-moving party. *Ellison v.*
11 *Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

12 **III.   ANALYSIS**

13 Defendants argue that Counts I, III, IV, V and VI of Plaintiffs' Complaint are barred
14 by their respective statutes of limitations.[2] (Dkt. 56 at p. 6.) Defendants generally argue that
15 these Counts accrued, if at all, by November 2006.

16 **A.   <u>State Law Claims – Counts I and III</u>**

17 Defendants seek entry of judgment in their favor with respect to two of Plaintiffs'
18 three state law claims: Count I (Negligence/Gross Negligence) and Count III (Abuse of
19 Process) on the grounds that Plaintiffs' claims are barred by the statute of limitations.

20 The parties dispute the relevant statute of limitations period for Plaintiffs' state law
21 claims. Plaintiffs argue the relevant statute of limitations is two years pursuant to A.R.S. §
22 12-542. Whereas, Defendants argue the statute of limitations is one year pursuant to A.R.S.
23 § 12-821. Section 12-821 of the Arizona Revised Statutes limits the time period in which
24 actions can be brought against public entities and public employees: "All actions against any
25 public entity or public employee shall be brought within one year after the cause of action

---

[2] Defendants do not argue that Count II (Malicious Prosecution) in the Complaint is time barred; therefore, this claim survives the First Motion for Summary Judgment.

1    accrues and not afterward." Because Plaintiffs have filed suit against a public employee and
2    public entities, the correct statute of limitations with respect to Plaintiffs' state law
3    negligence and abuse of process claims is one year. *See e.g.*, *Stulce v. Salt River Project
4    Agric. Improvement & Power Dist.*, 3 P.3d 1007, 1008 (Ariz. App. 1999) (affirming the
5    dismissal of a negligence suit against a public entity based on the plaintiff's failure to bring
6    the suit within one year as required by A.R.S. § 12-821).

7          Due to the one-year statute of limitations period, Plaintiffs' state law claims are
8    untimely if they did not accrue within one year of the filing of the Complaint. Plaintiffs filed
9    their Complaint on June 3, 2009; therefore, their state law claims are untimely if the claims
10   did not accrue after June 3, 2008. Defendants argue that, as evidenced by the 2006 Notice
11   of Claim, Plaintiffs knew they were injured as early as July 10, 2006. (Dkt. 91 at p. 2.)
12   Plaintiffs argue that the conduct complained of continued up until the time that all 25 felony
13   counts were dismissed on August 26, 2008, which is within the limitations period. (Dkt. 70
14   at p. 1.) Defendants respond to this argument by alleging that Plaintiffs' state law claims are
15   not continuing torts, and the post-2006 conduct of Defendants was neither continuous, nor
16   tortious. (Dkt. 91 at pp. 4–5.)

17         In Count I of the Complaint, Plaintiffs allege negligence and gross negligence with
18   respect to Defendants' investigation, encouragement and provision of information on which
19   the criminal prosecution was based. (Dkt. 1-1, Ex. A at ¶ 73.) In Count II of the Complaint,
20   Plaintiffs allege Defendants engaged in an abuse of process by participating in the criminal
21   investigation and prosecution of Dowling, which investigation resulted in an indictment. (*Id.*
22   at ¶ 84.) Both of these claims involve the Defendants' roles in investigating and aiding the
23   prosecution of Dowling. Plaintiffs argue in their response that Defendants' involvement did
24   not cease with the indictment of Dowling on November 16, 2006: "While some of the
25   conduct engaged in by Defendants which gave rise to these claims began in 2006, that same
26   conduct continued up until the time the charges were dismissed in the summer of 2008."
27   (Dkt. 70 at p. 9.)

28         Plaintiffs correctly note that a claim for negligent investigation may accrue after the

- 6 -

1 arrest of a plaintiff, if the investigation occurred after the arrest, *Mohajerin v. Pinal County*, 2 2007 WL 4358254, *6 (D. Ariz. Dec. 7, 2007), and a claim for abuse of process can accrue 3 at any time during the course of litigation, *id.* at *5. Accordingly, Plaintiffs' claims for 4 negligence/gross negligence and abuse of process are not barred simply because Dowling's 5 indictment occurred more than one year before Plaintiffs commenced this action. The 6 Complaint contains factual allegations regarding the prosecution of Dowling, which did not 7 end until August 26, 2008, when the Plea Agreement was approved and the felony counts 8 dismissed.

9 Under certain conditions, a tort can be continuous and the statute of limitations does 10 not begin to run until the date of the last tortious act. *Floyd v. Donahue*, 923 P.2d 875, 879 11 (Ariz. App. 1996) (citing *Garcia v. Sumrall*, 121 P.2d 640, 643 (Ariz. 1942) (holding that 12 where a trespass is continuing in nature, an action may be brought any time within two years 13 of the last trespass, but damages are recoverable only for trespass occurring within the 14 limitations period)). However, there is no authority under Arizona law for the proposition 15 that the torts of negligence and abuse of process are continuing torts. A commission of either 16 of these torts may have continuing effects, but those continuing effects do not forestall the 17 accrual of a cause of action.

18 Under A.R.S. § 12-821.01(B), "a cause of action accrues when the damaged party 19 realizes he or she has been damaged and knows or reasonably should know the cause, source, 20 act, event, instrumentality or condition which caused or contributed to the damage." The 21 term "accrual" in A.R.S. § 12-821.01(B) is construed in accordance with the common law 22 discovery rule. *Little v. State*, 240 P.3d 861, 864 (Ariz. App. 2010). As long as a plaintiff 23 has notice of wrongful conduct, it is not necessary that the plaintiff have knowledge of all 24 the details in order for the cause of action to accrue. *Doe v. Roe*, 955 P.2d 951, 962 (Ariz. 25 1998) ("A plaintiff need not know all the facts underlying a cause of action to trigger 26 accrual."); *CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A.*, 7 P.3d 979, 982 (Ariz. App. 27 2000) ("[A]ccrual requires only actual or constructive knowledge of the fact of damage, 28 rather than of the total extent or calculated amount of damage[.]"). A cause of action accrues

when a plaintiff discovers the injury is attributable to a particular defendant's conduct. *Lawhorn v. L.B.J. Inst. Supply, Inc.*, 765 P.2d 1003, 1007 (Ariz. App. 1988). The cause of action does not accrue until the plaintiff knows both the "what" and "who" elements. *Id.*

It is clear that Plaintiffs had notice of Defendants' conduct giving rise to the claims by July 10, 2006, when the 2006 Notice of Claim was served on Defendants. The 2006 Notice of Claim identifies the persons and the actions that give rise to the same causes of action set forth in the Complaint, albeit at the early state of the investigation of Dowling. Certainly, Plaintiffs had sufficient notice of the allegedly wrongful conduct described in Counts I and II of the Complaint as early as November 16, 2006, when the investigation of Dowling culminated in her indictment. The Complaint does not allege any additional basis for a claim of negligence or abuse of process that did not stem from the Board's and MCSO's investigation and assistance with the indictment of Dowling. Because the continuing violation theory does not apply to the torts of negligence and abuse of process, the continuation of the investigation and the criminal prosecution does not toll the statute of limitations when Plaintiffs were aware of the allegedly wrongful conduct more than one year before the Complaint was filed.

Plaintiffs argue that Defendants' continued participation in the investigation and prosecution of Dowling is actionable in and of itself, and occurred within the limitation period.[3] (Dkt. 70 at p. 13.) As set forth in Plaintiffs' supplemental statement of facts, the allegedly wrongful conduct occurring after June 3, 2008, which is within the limitations period, is based on allegations that the Board's attorney objected to a provision of the Plea Agreement and that MCSO continued its investigation of Dowling until the Plea Agreement was finalized. (Dkt. 81.) These actions do not constitute wrongful acts rising to the level of separately actionable torts. Plaintiffs do not allege any facts to indicate how Defendants' continuation of an investigation or aid to prosecutors after June 3, 2008 satisfies the elements

---

[3] Plaintiffs base this argument on the two-year statute of limitations for personal torts, not the applicable one-year statute of limitations for actions against public entities.

- 8 -

of negligence[4] or abuse of process.[5]

Accordingly, Plaintiffs' claims for negligence and abuse of process (Counts I and II of the Complaint) are barred by the statute of limitations, because Plaintiffs were aware of the wrongful conduct alleged in the Complaint as early as November 16, 2006, and failed to bring a cause of action within the one-year limitations period. Further, based on the date on which the Complaint was filed, Plaintiffs have not alleged facts to support timely state law claims that accrued within the one-year limitations period.

### B.     Section 1983 Claims – Counts IV, V and VI

Defendants also seek an entry of judgment in their favor with respect to Count IV (42 U.S.C. § 1983 – Unconstitutional Policies, Customs, and Failure to Train), Count V (Conspiracy to Commit Violations of 42 U.S.C. § 1983),[6] and Count VI (Violations of 42 U.S.C. § 1983: Free Speech, Law Enforcement Retaliatory Conduct, Malicious and Selective Prosecution, and Abuse of Process) on the grounds that Plaintiffs' § 1983 claims are barred by the statute of limitations.

"Section 1983 does not contain its own statute of limitations." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1998). Therefore, federal courts must apply a statute of

---

[4] To establish a cause of action for negligence, a plaintiff must show a duty, a breach of that duty, causation, and injury or damages. *Saucedo v. Salvation Army*, 24 P.3d 1274, 1278 (Ariz. App. 2001).

[5] To establish a cause of action for abuse of process, a plaintiff must show that the defendant has used a legal process against the plaintiff primarily to accomplish a purpose for which the process was not designed, and harm has been caused to the plaintiff by such misuse of process. *Nienstedt v. Wetzel*, 651 P.2d 876, 881 (Ariz. App. 1982).

[6] Plaintiffs argue that Defendants have presented no substantive grounds for dismissal of Count V (Conspiracy to Commit Violations of 42 U.S.C. § 1983), and should be barred from addressing this claim in Defendants' reply brief. (Dkt. 70 at p. 9 n.10.) Defendants refer to Counts IV, V and VI of the Complaint generically and inclusively as "Plaintiffs' civil rights claims under § 1983." (Dkt. 56 at p. 10). Defendants continue to refer to Plaintiffs' three § 1983 claims in this manner in their reply brief. Even though Defendants briefly address Plaintiffs' civil conspiracy argument, there is no reason to ignore Defendants' treatment of Count V in their reply brief.

1 limitations from the forum state to § 1983 claims. *Id*. Because the Supreme Court has 2 "directed the lower federal courts in § 1983 cases to borrow the state-law limitations period 3 for personal injury claims," *Felder v. Casey*, 487 U.S. 131, 140 (1988), federal courts in 4 Arizona apply a two-year statute of limitations to all § 1983 claims, *TwoRivers*, 174 F.3d at 5 991; *see* A.R.S. § 12-542.

6 Plaintiffs were required to file their complaint within two years of the date that the 7 alleged § 1983 causes of action accrued. *Madden-Tyler v. Maricopa County*, 943 P.2d 822, 8 826 (Ariz. App. 1997). Federal courts look to federal, not state, law to determine when a 9 § 1983 claims accrues. *TwoRivers*, 174 F.3d at 991 (citing *Elliott v. City of Union City*, 24 10 F.3d 800, 801–02 (9th Cir. 1994)). Under federal law, a § 1983 claim, "accrues when a 11 plaintiff knows or has reason to know of the injury which is the basis of the action." *Id*. 12 (citing *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996)).

13 Based on the two-year limitations period, Plaintiffs' claims are untimely if they did 14 not accrue within two years of the filing of the Complaint. Defendants acknowledge that the 15 continuing violation theory applies to § 1983 claims, but argue that Plaintiffs failed to allege 16 any wrongful acts committed by Defendants during the limitations period (*i.e.*, after June 3, 17 2007). (Dkt. 91 at pp. 6–7.) Plaintiffs argue that Defendants continued to engage in 18 wrongful conduct up until the felony charges against Dowling were dismissed on August 26, 19 2008, and the claims based on Defendants' continuing conduct were brought within the two- 20 year limitations period. (Dkt. 70 at p. 10.)

21 The continuing violation theory, which applies to § 1983 claims, allows a plaintiff to 22 seek relief for events outside the limitations period. *Knox v. Davis*, 260 F.3d 1009, 1013 (9th 23 Cir. 2001). In order to show a continuing violation, a plaintiff must state facts sufficient to 24 support a determination that the alleged discriminatory acts are related closely enough to 25 constitute a continuing violation, and that one or more of the acts falls within the limitations 26 period. *Id.* (quoting *DeGrassi v. City of Glendora*, 207 F.3d 636, 645 (9th Cir.2000)). 27 However, a "mere continuing *impact* from past violations is not actionable." *Id.* (quoting 28 and citing numerous authorities). In *Knox*, the Court of Appeals held that the continuing

- 10 -

1  violation doctrine was inapplicable, because the prison's subsequent and repeated denials of
2  Knox's privileges with her clients were merely the continuing effect of her original
3  suspension. *Id.*

4  With respect to Count V and the continuing conspiracy theory, the Ninth Circuit has
5  determined that the "last overt act" doctrine applies to the accrual of civil conspiracies for
6  limitations purposes. *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986). Under
7  the last overt act doctrine, the injury and damage in a civil conspiracy action flows from the
8  overt acts, not from the mere continuance of a conspiracy, and the cause of action runs
9  separately from each overt act that is alleged to cause damage to the plaintiff. *Id.* (holding
10 that a plaintiff may recover only for the overt acts that specifically were alleged to have
11 occurred within the limitations period).

12 Contrary to Defendants' contention, the acts alleged in Counts IV, V and VI of the
13 Complaint are not limited to acts occurring prior to the November 16, 2006 indictment of
14 Dowling. With respect to Count IV of the Complaint, Plaintiffs allege that Defendants
15 violated Plaintiffs' constitutional rights by failing to adopt "policies and procedures to ensure
16 due process and equal protection for those subject to investigation and prosecution." (Dkt.
17 1-1, Ex. A at ¶ 91.) Count V of the Complaint alleges that the Defendants' pursuit of the
18 investigation and prosecution of Dowling was undertaken pursuant to a meeting of the minds
19 among Defendants to act in concert to violate Plaintiffs' constitutional rights. (*Id.* at ¶¶
20 101–02.) Finally, Count VI of the Complaint alleges that "Dowling was investigated,
21 indicted, and prosecuted by or at the behest of Defendants for improper unconstitutional
22 motives." (*Id.* at ¶ 109.) As noted above, the criminal prosecution of Dowling began with
23 her indictment on November 16, 2006, and ended on August 26, 2008 with the Plea
24 Agreement and dismissal of the felony charges. Plaintiffs' § 1983 claims are not barred
25 simply because Dowling's indictment occurred at least two years before Plaintiffs
26 commenced this action. Part of the prosecution and the continued investigation of Dowling
27 occurred within the limitations period for Plaintiffs' § 1983 claims.

28 Applying the continuing violation theory, Plaintiffs' § 1983 claims are not barred by

- 11 -

1. the statute of limitations if the claims are based on discriminatory or overt acts that occurred within the limitations period (*i.e.*, after June 3, 2007).  However, Plaintiffs cannot obtain relief against Defendants under § 1983 for alleged discriminatory events that occurred outside the two-year statute of limitations period.  *See Berg v. Cal. Horse Racing Bd.*, 419 F. Supp. 2d 1219, 1227 (E.D. Cal. 2009).  The Court does not need to address Plaintiffs' requested relief at this time.  The inquiry currently before the Court is whether Plaintiffs introduced facts, which if viewed in the light most favorable to Plaintiffs, as the non-moving party, raise material questions about whether Defendants continued to discriminate against Dowling within the statute of limitations period.  *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 824 (9th Cir. 2001).

Plaintiffs allege that "Defendants pushed, encouraged, contributed to, or otherwise participated in the decision to 'investigate' *and later prosecute* Dr. Dowling, all for their own benefit and to further their improper and unconstitutional, political, and retaliatory motives." (Dkt. 1-1, Ex. A at ¶ 40) (emphasis added).  The Complaint provides that "[u]pon information and belief, other superintendents similarly situated are not subjected to such heavy-handed investigation *and prosecution*." (*Id.*) (emphasis added). Plaintiffs allege that "[i]n the 'investigation' into Dr. Dowling's activities, the indictment brought against her, her booking, *and the subsequent criminal proceedings*, the Defendants acted maliciously and without any probably cause to believe that Dr. Dowling was guilty of any of the crimes." (*Id.* at ¶ 62) (emphasis added). Repeated references to the investigation *and prosecution* clearly expand scope of the Complaint beyond the actions of Defendants prior to the November 16, 2006 indictment.  In fact, the Complaint refers to the July 2008 motion to dismiss the remaining felony charges, Dowling's August 26, 2008 guilty plea, and a subsequent civil suit filed by Defendants against Plaintiffs in connection with the MCRSD.  (*Id.* at ¶¶ 58–61.)

Plaintiffs' supplemental statement of facts sets forth specific actions taken by Defendants after June 3, 2007, in connection with the investigation and prosecution of Dowling.  (Dkt. 71 at ¶¶ 70–81.)  Specifically, Defendants received information and interviewed potential witnesses (*id.* at ¶ 70), picked up the State's audit of the MCRSD (*id.*

1  at ¶ 71), met with FBI official to discuss the status of the investigation (*id.* at ¶ 72), continued
2  to follow leads in the open investigation (*id.* at ¶ 73), met with the U.S. Attorney's Office to
3  discuss the dismissal of felony charges (*id.* at ¶ 75), appeared at the sentencing hearing and
4  objected to a provision in the Plea Agreement (*id.* at ¶ 76), wrote to the Judge regarding the
5  enforcement of the Plea Agreement (*id.* at ¶ 77), and continued to pursue a civil action
6  against Plaintiffs (*id.* at ¶¶ 80–81).

7  While the alleged wrongdoing began in 2006, the Complaint, the 2008 Notice of
8  Claim, and Plaintiffs' supplemental statement of facts describe actions taken by Defendants
9  after June 3, 2007, which support continuing violations of § 1983 in connection with the
10  investigation and criminal prosecution of Dowling. Because one or more of these alleged
11  acts occurred within the two-year limitations period, the Court finds that Plaintiffs have pled
12  sufficient facts to show that Defendants engaged in actions after June 3, 2007, that, if true,
13  may show a continuing violation of Plaintiffs' constitutional rights under § 1983. The merits
14  of Plaintiffs' § 1983 claims is not before the Court. Accordingly, Counts IV, V and VI of
15  the Complaint are not barred by the statute of limitations.

16  **IV.   CONCLUSION**

17  Based on the foregoing, the Court will grant the First Motion for Summary Judgment
18  with respect to Plaintiffs' state law claims. Plaintiffs have not alleged any facts to support
19  timely state law claims that accrued within the one-year limitations period. However, the
20  Court will deny the First Motion for Summary Judgment with respect to Plaintiffs' § 1983
21  claims, because Plaintiffs set forth sufficient facts to demonstrate that Defendants' allegedly
22  discriminatory or overt acts related closely enough to constitute a continuing violation, and
23  that one or more of these acts falls within the two-year statute of limitations period.

24  Because the First Motion for Summary Judgment was limited to statutes of limitations
25  issues, the Court has not considered the merits of any of Plaintiffs' claims. Therefore,
26  Defendants may file a second motion for summary judgment on the merits of Counts II, IV,
27  V and/or VI in accordance with the schedule previously set forth by the Court.

28  Accordingly,

**IT IS ORDERED** that Arpaio Defendants' First Motion for Summary Judgment (Doc. # 56) is granted in part with respect to Counts I and III of the Complaint, and denied in part with respect to Counts IV, V and VI.

DATED this 8th day of March, 2011.

James A. Teilborg
United States District Judge