1    **WO**

2

3

4

5

6                   IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9    Sandra Dowling and Dennis Dowling,)        No. CV-09-1401-PHX-JAT
     husband and wife,                   )
10                                        )        **ORDER**
                     Plaintiffs,          )
11                                        )
     vs.                                  )
12                                        )
                                          )
13   Sheriff Joseph Arpaio and Ava Arpaio,)
     husband and wife; Maricopa County Board)
14   of Supervisors; Maricopa County, a)
     Municipal entity; John Does I-X; Jane)
15   Does I-X; Black Corporations I-V; and)
     White Partnerships, I-V,             )
16                                        )
                     Defendants.          )
17                                        )
                                          )
18

19        Currently before the Court is the Motion for Protective Order Regarding Deposition

20   of Ted Noyes. (Doc. 128). Noyes is not a party in the current litigation between Plaintiffs and

21   Defendants. Defendant Arpaio filed a response on March 7, 2011 (Doc. 150) and Noyes filed

22   a reply on March 16, 2011. (Doc. 154). Plaintiffs have not submitted any briefing on this

23   issue. For the reasons below, the Court grants Noyes's Motion for Protective Order under the

24   Deliberative Process Privilege and, alternatively, under Prosecutorial Immunity. However,

25   the scope of this protective order is limited as described below.

26   **I. Background**

27        On January 11, 2006, the Maricopa County Sheriff's Office ("MCSO") began

28   investigating Sandra Dowling's alleged financial improprieties when Dowling was the

1   Maricopa County Superintendent of Schools. Noyes worked as the prosecutor assigned to

2   the case and at the time was the Assistant Attorney General. According to Defendant, the

3   lead MCSO investigator relied heavily on Noyes's legal expertise, especially since the

4   "investigation did not involve the traditional Title 13 criminal statutes, but instead involved

5   issues related to the statutes governing public finance and public officers." (Doc. 150, 2:7–9).

6       The investigation culminated in a grand jury proceeding and Dowling was indicted

7   on 25 felony counts on November 16, 2006. However, in 2008, the felony charges in the

8   indictment were dropped and Dowling pled guilty to a misdemeanor that was not included

9   in the original indictment. On June 3, 2009, Dowling brought suit against Defendants Arpaio,

10  the Maricopa County Board of Supervisors, and Maricopa County, alleging claims of

11  malicious prosecution, abuse of process and negligent criminal investigation, and claims of

12  "conspiracy and unconstitutional policies, training and supervision with respect to criminal

13  investigations." (Doc. 150, 2:19–20).

14      Defendant Arpaio seeks to depose Noyes, who is no longer with the Attorney

15  General's office, because he "possesses relevant and material evidence that is not obtainable

16  from any other source regarding the investigation and indictment that form the basis for

17  Plaintiffs' claims against the Arpaio Defendants." (Doc. 150, 2:22–3:2). Specifically,

18  Defendant seeks the following information from Noyes: (i) his involvement and input in the

19  investigation; (ii) his contact with Plaintiff's defense counsel; (iii) his prosecutorial

20  assessment of the case; (iv) the grand jury proceedings; and (v) the course of the prosecution

21  after the indictment up to the time when he was conflicted off the case. (Doc. 129, 3:5–7).

22  Noyes argues that the Court should grant a Protective Order quashing the deposition because

23  the information sought is protected for the following reasons: (1) the *Hickman* and the work-

24  product protection; (2) attorney-client privilege; (3) deliberative process and mental

25  impressions privilege; and (4) prosecutorial immunity.

26  **II.    Arguments for Protective Order**

27          **A.    *Hickman* and the Work-Product Protection**

28          Under Rule 26(b)(3)(A), "a party may not discover documents and tangible things that

- 2 -

1  are prepared in anticipation of litigation" by or for another party unless (1) they are otherwise

2  discoverable and (2) the party can show that is has a substantial need for the materials and

3  that substantially equivalent materials cannot be obtained without undue hardship. Fed. R.

4  Civ. P. 26(b)(3)(A).However, even when the protection is not afforded to certain materials,

5  the court must "protect against disclosure of the mental impressions, conclusions, opinions,

6  or legal theories of a party's attorney or other representative concerning the litigation." *Id.*

7  26(b)(3)(B). In *Hickman v. Taylor*, the Supreme Court rejected an attempt to "secure written

8  statements, private memoranda and personal recollections prepared or formed by an adverse

9  party's counsel in the course of his legal duties." *Hickman v. Taylor*, 329 U.S. 495, 510

10  (1947). The Court went on to say that were such disclosure required, "[i]nefficiency,

11  unfairness and sharp practices would inevitably develop in the giving of legal advice . . . .

12  The effect on the legal profession would be demoralizing." *Id.* at 511.

13         The degree to which the courts have held *Hickman* to represent the same standard as

14  Fed. R. Civ. P. 26(b)(3) varies. In *Crosby v. City of New York*, 269 F.R.D. 267, 277

15  (S.D.N.Y. 2010), a case relied on by Noyes, the court held that "the work-product doctrine

16  articulated in *Hickman* and its progeny . . . is broader than the protection supplied by Rule

17  26(b)(3)." However, in *State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 66 (1st Cir.

18  2002), the court held that "the work-product privilege first established in *Hickman* . . . [is]

19  codified in FED.R.CIV.P. 26(b)(3)." *But see United States v. Deloitte LLP*, 610 F.3d 129, 136

20  (D.C. Cir. 2010) (court held that "Rule 26(b)(3) only *partially* codifies the work-product

21  doctrine announced in *Hickman*") (emphasis added).

22         The Ninth Circuit addressed this issue in *In re California Pub. Util. Com'n*, 892 F.2d

23  778, 781 (9th Cir. 1989), which involved a discovery dispute between the California Public

24  Utilities Commission (CPUC) and Westinghouse Electric. CPUC was not a party to the

25  action between Westinghouse and Southern California Edison. However, CPUC had issued

26  several interim decisions, the last of which said that in order to raise its rates on its

27  customers, Edison had "to file suit against Westinghouse as soon as possible." *In re*

28  *California*, 892 F.2d at 780. Westinghouse served a subpoena *duces tecum* requesting all

1  "documents, memoranda, and correspondence to the litigation between Edison and

2  Westinghouse" and CPUC moved to quash the subpoena. *Id.*

3       In ruling that CPUC's materials did not qualify for the work-product protection, the

4  court explained that "[a]lthough some courts have extended the work product privilege

5  outside the literal bounds of the rule, we conclude that the rule, on its face, limits its

6  protection to one who is a party (or a party's representative) to the litigation in which

7  discovery is sought." *Id.* at 781. CPUC argued that under the policy of Rule 26(b)(3) the

8  protection should be extended to "safeguard the attorney-client relationship by enabling

9  attorneys to record their thoughts and advice candidly and completely." *Id.* However, the

10 court ruled that even if that were the policy of the rule, "the language of the rule makes clear

11 that only *parties* and their representatives may invoke its protection. [The court was] not free

12 to suspend the requirement" and, therefore, Rule 26(b)(3) was inapplicable. *Id.*[1] Noyes is not

13 a party to the action between Plaintiffs and Defendants. Even though Noyes was involved

14 in the *criminal* action that led to the current *civil* action before the Court, applying Rule

15 26(b)(3), as directed by the Ninth Circuit, precludes Noyes from the work-product protection.

16 Therefore, Noyes's motion for protection order is denied under *Hickman* and the work-

17 product protection.

18      **B. Attorney-Client Privilege**

19      Noyes also claims that his deposition should be prevented because the information

20 sought by Defendant falls under the attorney-client privilege and is therefore protected.

21 However, the Court has not found any authority that states that a prosecutor has an actual

22 client with whom there can be a privilege. Instead, for example, the Seventh Circuit has held

23 that "a prosecutor's 'client' is not an individual, but society as a whole." *Americanos v.*

24

25

26      [1]The Ninth Circuit also cited Federal Practice and Procedure, which says
"[D]ocuments prepared for one who is not a party to the present suit are wholly unprotected

27 even though the person may be a party to a closely related lawsuit in which he will be
disadvantaged if he must disclose in the present suit." *In re California*, 892 F.2d at 781.

28 (citation omitted).

1  *Carter*, 74 F.3d 138, 143 (7th Cir. 1998). Therefore, the Court denies Noyes's Motion for

2  Protective Order based on an attorney-client privilege.

3  **C. Deliberative Process and Mental Impression Privileges**

4  Noyes argues that the Court should grant a protective order regarding his deposition

5  because it falls under the protection of the deliberative process and mental impressions

6  privileges. The Court has not found a separate authority granting a privilege solely as a

7  "mental impression" privilege. Instead, the two concepts are viewed in conjunction with one

8  another—a party seeks the mental impressions of a person as contained in that person's

9  deliberative process. The deliberative process privilege permits the government to withhold

10  documents and testimony "that reflect advisory opinions, recommendations and deliberations

11  comprising part of a process by which government decisions and policies are formulated."

12  *FTC v. Warner Commc'n Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984); *Arizona ex rel. Goddard*

13  *v. Frito-Lay, Inc.*, 2011 WL 772859, *4 (D. Ariz. 2011). However, this privilege is a

14  qualified one. "A litigant may obtain deliberative materials if his or her need for the materials

15  and accurate fact-finding override the government's interest in non-disclosure." *FTC*, 742

16  F.2d at 1161. To determine whether the privilege has been overcome, the following factors

17  are to be considered: "1) the relevance of the evidence; 2) the availability of other evidence;

18  3) the government's role in the litigation; and 4) the extent to which disclosure would hinder

19  frank and independent discussion regarding contemplated policies and decisions." *Id.*

20  Defendant seeks the following information from Noyes: 1) his involvement and input

21  in the investigation; 2) his contact with Dowling's defense counsel; 3) his prosecutorial

22  assessment of the case; 4) the grand jury proceedings; and 5) the course of the prosecution

23  "after the Indictment up to the time he was conflicted off the case." (Doc. 129, 3:13–18). The

24  only category of information sought by Defendant that could not be reasonably obtained

25  through another method, or that is not already in Defendant's possession, would be Noyes's

26  prosecutorial assessment of the case. Defendant's own employees worked with Noyes and

27  would be able to testify as to Noyes's involvement and input into the investigation, since that

28  input would have to go to the agency tasked with investigating Dowling's alleged

1   wrongdoing. As to the contact with Dowling's defense counsel, Defendant can obtain that

2   information from defense counsel. This would allow Defendant access to information

3   without potentially breaching Noyes's deliberative process privilege. In fact, Defendant's

4   contact with Dowling's defense counsel *as to the contact with Noyes* would not breach any

5   privilege or immunity. Defendant can likewise request information from the court as to the

6   grand jury proceedings without having to depose Noyes, and, in a similar vein, Defendant

7   can adequately identify the course of the prosecution by other means.

8        What remains before the Court is Defendant's request to determine Noyes's

9   prosecutorial assessment of the case. The Court understands this request to be Noyes's

10  thoughts and assessment of the evidence that was gathered against Dowling and his own

11  deliberations regarding which charges to bring against Dowling in the indictment. This

12  information falls within the deliberative process privilege and, therefore, the issue becomes

13  whether the four factors weigh in favor of allowing the privilege to be overcome. Again, the

14  four factors are: 1) relevance of the evidence, 2) availability of other evidence, 3) the

15  government's role in the litigation, and 4) "the extent to which disclosure would hinder frank

16  and independent discussion regarding contemplated policies and decisions." *FTC*, 742 F.2d

17  at 1161.

18       There is no argument by either party regarding the relevancy of Noyes's assessment

19  of the case and therefore this factor weighs in Defendant's favor. The second factor,

20  availability of other evidence, also weighs in Defendant's favor. However, this depends on

21  how "prosecutorial assessment" is defined. If it is defined as the Court has interpreted it

22  above, as evidence of his deliberative process as to *how and why* he decided what to include

23  in the indictment against Dowling, then there is no other way to obtain that information. But

24  if "prosecutorial assessment" is defined to mean how Noyes decided to act after examining

25  the evidence provided, then Defendant can obtain that information simply by examining the

26  indictment brought to the grand jury. That indictment contains Noyes's assessment of the

27  case as a prosecutor—it reflects what he thought should be included based on the evidence.

28       The third element, the government's role in the litigation, weighs in favor Noyes

1 rather than Defendant. In *Frito-Lay*, the plaintiff sought protection under the deliberative

2 process privilege. *Frito-Lay*, 2011 WL 772859, at *4. The court noted the importance of the

3 fact that the plaintiff made a reasonable cause determination, which then became admissible

4 at trial, but that it was the plaintiff who sought to have this finding protected under the

5 privilege. *Id.* at *6. Here, because the prosecutor's office is not involved in the litigation,

6 there is less of a need to overcome the privilege.

7 　　　　The last element is whether overcoming the privilege would hinder frank and

8 independent discussion "regarding contemplated policies and decisions." Prosecutors are in

9 a unique position in our legal system. They must be able to freely consider the evidence and

10 determine how best to proceed against those charged with breaking the law, without having

11 their decisions second-guessed by others. Were this Court to allow Noyes to be deposed

12 regarding his deliberative process in the case against Plaintiff, it would set an undesirable

13 precedent for the future. Defendants who are charged with a crime, but later have those

14 charges dropped or who are acquitted after a trial, would be able to question the prosecutor

15 through a deposition or in court, and hunt for any hint of wrongdoing, even where none

16 might exist. Prosecutors must be able to freely develop legal theories based on certain

17 evidence without the fear that the choice to develop theory A over B, or to give greater

18 weight to evidence C over D, would allow that prosecutor to be the subject of a rigorous

19 deposition or courtroom proceeding. Therefore, the Court grants Noyes's Motion for

20 Protective Order because his deposition would constitute an unjustifiable invasion of Noyes's

21 deliberative process privilege.

22 　　　　**D. Prosecutorial Immunity**

23 　　　　In *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976), the Supreme Court held that

24 prosecutors enjoy absolute immunity from their actions "in initiating a prosecution and in

25 presenting the State's case." In *Imbler*, the plaintiff brought a civil rights action against the

26 state prosecuting attorney, claiming loss of liberty caused by unlawful prosecution. *Id.* at 409.

27 The Supreme court explained that a prosecutor is

28 　　　　　　　　duly bound to exercise his best judgment both in deciding which

1
2
3
4

> suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. . . . Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law.

5

6

7

8

*Id.* at 424–25. Noyes is not a party to the lawsuit between Plaintiff and Defendant. *Imbler*, and most of its progeny, have only applied prosecutorial immunity to matters in which the prosecutor is a named defendant. As such Noyes is not immediately entitled to protection under this immunity.

9

10

11

12

13

14

15

16

17

18

19

Noyes cites to *Chang v. U.S.*, 246 F.R.D. 372 (D. D.C. 2007), which extended *Imbler*'s protection to include the deposition of a non-party prosecutor. The court explained that to require prosecutors to defend their decisions and discretion, "regardless of whether they are the named defendants, implicates the same concerns the Supreme Court articulated in *Imbler*." *Chang*, 246 F.R.D at 374. As an alternative basis for this ruling, this Court embraces the reasoning put forth in *Chang*. To allow a party to depose a prosecutor, even though the prosecutor is not a named party to the action, would implicate the same concerns that have been articulated above, namely a chilling effect on a prosecutor's decision-making and thought processes. The Court will not allow Defendant, or future defendants, to create an end run around the protections and prohibitions articulated in *Imbler*.

20

21

22

23

24

It is important to note that by granting Noyes's Motion for Protective Order, the Court is not prohibiting the *convening* of the deposition, to the extent that it is not outside the contours of this order. Therefore, the Court will allow the deposition to take place to identify those, and only those, factual matters that are not attainable from other sources. To the extent that Noyes is the sole source of the *factual* information sought,[2] his deposition may proceed.

25

26

27

28

> [2]For example (which arose during oral argument) it would be appropriate to depose Noyes regarding the organization of the file he used during Dowling's investigation. However, if the deposition were to seek information regarding *why* something was put into the file, then the deposition would be contrary to this order.

1      Accordingly,

2      **IT IS ORDERED** that Noyes's Motion for Protective Order Regarding Deposition

3 of Ted Noyes (Doc. 128) is **GRANTED** except for the limited purpose of seeking factual

4 information of which Noyes is the only source**.**

5      DATED this 15th day of April, 2011.

6

7

8                            James A. Teilborg
                        United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28